MARTIN, Justice.
An expert in forensic science testified as to her opinion that a substance was cocaine, based upon her independent analysis of testing performed by another analyst in her laboratory. The Court of Appeals held that this testimony violated defendant’s Sixth Amendment right to confront witnesses against him. We disagree and reverse.
On the night of 16 May 2007, Officer Craig Vollman of the Charlotte Mecklenburg Police Department (CMPD) was on patrol duty in the University City area. Around 10:30 p.m. a car driven by defendant pulled into an Exxon gas station. Officer Vollman observed that the car’s thirty-day temporary tag was “ratty and old” and the “dates looked to be tampered with.” When defendant parked in front of the gas station store, Officer Vollman pulled his patrol car behind defendant’s vehicle and approached him to speak about the thirty-day tag. While defendant looked through the glove compartment for the car’s registration paperwork, Officer Vollman shined his flashlight around the car to check for weapons. Upon shining the light in the storage compartment of the open driver’s door, he saw what he believed to be cocaine packaged in a plastic bag.
Officer Vollman asked defendant what was in the bag. According to Officer Vollman’s testimony, defendant stated, “It’s mine,” and responded affirmatively that it was cocaine but that “it was for personal use.” Officer Vollman placed defendant under arrest. He then found “eight separate plastic sandwich baggies” in the same door compartment as the cocaine. He also searched defendant and found $304 in cash in his pocket. After defendant had been transported to the Mecklenburg County jail, another officer weighed the confiscated *3 substance and recorded the result as 4.5 grams. The substance was subsequently sent to the department’s crime lab for analysis. Defendant was indicted for possession with intent to sell or deliver cocaine.
At trial the State sought to introduce Tracey Ray of the CMPD crime lab as an expert in forensic chemistry. During voir dire proceedings on the matter, defendant sought to exclude admission of a lab report created by a non-testifying analyst and any testimony by any lab analyst who did not perform the tests or write the lab report. Defendant based this motion primarily on Sixth Amendment grounds, arguing that admission of this evidence would violate his right to confront witnesses against him. The trial court ruled that Ray could testify about the practices and procedures of the CMPD crime lab, her review of the testing in this case, and her independent opinion concerning the testing. But the trial court excluded admission of the non-testifying analyst’s lab report under Rule of Evidence 403.
Before the jury, the State introduced Ray as an expert in forensic chemistry. Ray testified she had been a forensic chemist for approximately eleven years and had analyzed substances more than one thousand times for trial purposes. Ray explained the standard procedures for receipt and storage of substances sent to the CMPD crime lab. She testified that, based on the initials and control number on the plastic bag containing the white substance — which had been admitted into evidence as Item Number 9 — the substance had been sent to the CMPD crime lab. She stated the initials “JPM” on the item indicated to her that a chemist named Jennifer Mills, who formerly had worked at the crime lab, “was in receipt of this evidence and that she sealed this particular piece of evidence.”
Ray then explained, based on her knowledge of the lab’s standard procedures, what would happen to an item such as Item Number 9 when it arrived for testing: First, the analyst would ensure that the control numbers on the property report and the actual property matched. Then, the analyst would weigh the substance and perform what is called a “presumptive test” to give an indication of what the substance might be. For substances suspected to be cocaine, the presumptive test is a cobalt thiocyanate test. If the substance turns blue, this indicates that cocaine may be present. Next, the analyst would perform a “confirmatory test” to determine the identity of the substance, using a gas chromatograph mass spectrometer (GCMS) or an infrared spectrometer (FTIR). The instruments that perform these tests record the results and data within the machine, allowing for *4 review later in time. According to Ray’s testimony, it is not possible to alter this reviewable data. After completing the testing, the laboratory analyst prepares a report and puts it in the item’s case file, along with all notes and data created during the testing. As part of the lab’s standard operating procedure, an administrative and a technical review are performed on nearly every case file by another analyst in the lab. As part of this review, the second analyst examines all the data in the case file to ensure he or she would have come to the same conclusion as to the identity of the substance.
Ray also explained that the lab has standard procedures for ensuring that the testing instruments are in working order. CMPD lab procedure dictates that all instruments be tested weekly and monthly, with the results recorded in each instrument’s maintenance log. Ray testified that she had reviewed the maintenance logs and determined that all the instruments appeared to have been in working order when Item Number 9 was tested.
Ray testified that she conducted a “peer review” on the chemical analysis of Item Number 9 for defendant’s trial. She reviewed all the lab notes and data from the testing instrument. She stated that the color test and the GCMS test performed on the substance are tests that “experts in the field of forensic chemistry would rely upon ... in performing [sic] the opinion as to the identity of a chemical substance.” The prosecutor asked Ray whether, based on her training and experience and her review of the case file here, she had formed an independent expert opinion about the substance at issue in this case. Defense counsel objected and was overruled. Ray testified, “My conclusion was that the substance was cocaine.”
On cross-examination defense counsel further clarified that “any opinions [Ray] g[a]ve in court about the nature of this substance [were] based entirely on testing done by someone else” and that Ray was not present when the tests were performed. Defense counsel also further clarified that Ray’s testimony assumed the testing analyst, Mills, had followed standard lab procedures in her testing of Item Number 9.
The jury convicted defendant of possession of cocaine. The Court of Appeals reversed the trial court, relying on State v. Williams, 208 N.C. App. 422, 702 S.E.2d 233 (2010). State v. Ortiz-Zape,_N.C. App._, 714 S.E.2d 275, 2011 WL 2848792 (2011) (unpublished). The court observed Ray “did not conduct any tests on the substance, nor was she present when [the testing chemist] did,” and concluded that *5 Ray “could not have provided her own admissible analysis of the relevant underlying substance.” Ortiz-Zape, 2011 WL 2848792 at *2 (alteration in original) (citations and quotation marks omitted). The court held “it was error for Ms. Ray to testify as to [the testing chemist’s] findings.” Id. (citation omitted). We allowed the State’s petition for discretionary review.
“Conclusions of law are reviewed de novo and are subject to full review.” State v. Biber, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citations omitted). Defendant argues that, because Ray did not test the substance at issue herself or personally observe any testing, she could form no independent opinion regarding the identity of the substance, and thus admission of her opinion identifying the substance as cocaine violated defendant’s rights under the Confrontation Clause. The State argues that there was no Confrontation Clause violation because the expert testified to her own opinion about the identity of the substance. We find no error in the trial court’s decision to allow the expert to state her opinion, and we reverse the decision of the Court of Appeals.
To resolve the issue raised in this case, we must examine the North Carolina Rules of Evidence in light of recent Confrontation Clause jurisprudence. The North Carolina Rules of Evidence allow for expert testimony “in the form of an opinion, or otherwise,” if the expert’s “scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,” provided: “(1) The testimony is based upon sufficient facts or data[;] (2) The testimony is the product of reliable principles and methods [and] (3) The witness has applied the principles and methods reliably to the facts of the case.” N.C. R. Evid. 702(a). The expert may base the opinion on facts or data “made known to him at or before the hearing.” Id. R. 703. “If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.” Id.
While the North Carolina Rules of Evidence permit an expert to present an opinion based on substantively inadmissible information, this evidentiary rule must comport with constitutional requirements. The Sixth Amendment to the United States Constitution provides that “[i]n all criminal prosecutions the accused shall enjoy the right... to be confronted with the witnesses against him.” U.S. Const, amend. VI. The jurisprudence interpreting this clause has undergone significant changes in recent years.
*6 In 2004 the Supreme Court of the United States concluded that testimonial statements of a witness who is absent from trial may be admitted only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004). Crawford overturned the former rule from Ohio v. Roberts, which “condition[ed] the admissibility of all hearsay evidence on whether it falls under a ‘firmly rooted hearsay exception’ or bears ‘particularized guarantees of trustworthiness.’ ” Id. at 60,124 S. Ct. at 1369 (quoting Roberts, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980)). While application of the Crawford rule depends on which statements qualify as testimonial hearsay, the Court declined to “spell out a comprehensive definition of ‘testimonial.’ ” Id. at 68, 124 S. Ct. at 1374. The Court noted, however, “Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.” Id. The Court further noted, “The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.” 541 U.S. at 60 n.9, 124 S. Ct. at 1369 n.9.
Since 2004 the Court has considered the application of Crawford in several cases involving forensic reports. In Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527 (2009), the trial court admitted into evidence three “ ‘certificates of analysis’ ’’ “showing the results of the forensic analysis” — that the substance in the seized bags was cocaine of a certain weight. Id. at 308, 129 S. Ct. at 2530-31. These certificates were sworn to before a notary public and admitted pursuant to state law as “ ‘prima facie evidence of the composition, quality, and the net weight of the narcotic.’ ” Id. at 308-09, 129 S. Ct. at 2531 (quoting Mass. Gen. Laws ch. Ill, § 13). The defendant was not given the opportunity to cross-examine the analysts who performed the tests and certified the results. Id. at 309, 129 S. Ct. at 2531. Citing Crawford, the Court concluded that “the analysts’ affidavits were testimonial statements, and the analysts were ‘witnesses’ for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial and that [the defendant] had a prior opportunity to cross-examine them, [the defendant] was entitled to ‘be confronted with’ the analysts at trial.” Id. at 311, 129 S. Ct. at 2532 (quoting Crawford, 541 U.S. at 54, 124 S. Ct. at 1365).
In 2011 the Court considered “whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification — made for the purpose of prov *7 ing a particular fact — through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification.” Bullcoming v. New Mexico,_U.S. _,_,, 131 S. Ct. 2705, 2710 (2011). At trial the State called an analyst who had not done the testing to introduce a lab report certifying the defendant’s blood-alcohol concentration. Id. at_, 131 S. Ct. at 2710. The Court held that “surrogate testimony of that order does not meet the constitutional requirement.” Id. at_, 131 S. Ct. at 2710.
In her concurring opinion in Bullcoming, Justice Sotomayor highlighted some of the scenarios not presented in that case: (1) The State presents an alternate purpose for the report; (2) The in-court witness “is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue”; (3) “[A]n expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence”; and (4) The State “introduced only machine-generated results, such as a printout from a gas chromatograph.” Id. at_, 131 S. Ct. at 2722 (Sotomayor, J., concurring in part).
Most recently, the Supreme Court considered Crawford’s application in Williams v. Illinois,_U.S._,_, 132 S. Ct. 2221, 2227 (2012). At trial an expert testified that “a DNA profile produced by an outside laboratory, Cellmark, matched a profile produced by the state police lab using a sample of [the defendant’s] blood.” Id. at_, 132 S. Ct. at 2227 (Alito, J., Roberts, C.J., Kennedy, & Breyer, JJ., plurality). The expert- did not perform or witness the testing that produced the DNA profile. Id. at_, 132 S. Ct. at 2245 (Breyer, J., concurring). The Court’s “fractured decision,” id. at_, 132 S. Ct. at 2265 (Kagan, Scalia, Ginsburg, & Sotomayor, JJ., dissenting), produced a plurality opinion of four Justices, a dissenting opinion of four Justices, and two concurring opinions (with one Justice concurring in the plurality’s judgment only). See Marks v. United States, 430 U.S. 188, 193, 97 S. Ct. 990, 993 (1977) (“When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, ‘the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .” (citation and internal quotation marks omitted)).
The four-Justice plurality concluded that (1) as the basis of the expert’s opinion, the statement was not admitted for the truth of the matter asserted, and (2) the Cellmark report “plainly was not prepared for the primary purpose of accusing a targeted individual.” Id. at_,_, 132 S. Ct. at 2240, 2243 (plurality). In other words, the plu *8 rality determined that the statement was neither hearsay nor testimonial and therefore did not violate the Confrontation Clause. Justice Thomas concurred in the result reached by the plurality because “Cellmark’s statements lacked the requisite formality and solemnity to be considered testimonial for purposes of the Confrontation Clause.” Id. at_, 132 S. Ct. at 2255 (Thomas, J., concurring in the judgment) (citation and internal quotation marks omitted). But he would have held the expert presented an out-of-court statement for the truth of the matter. Id. at_, 132 S. Ct. at 2256. The four-Justice dissent agreed with Justice Thomas on that point, arguing that the expert’s statement constituted an out-of-court statement for the truth of the matter asserted. Id. at_, 132 S. Ct. at 2268-72 (dissenting opinion). But the dissent disagreed with the plurality’s and Justice Thomas’s separate conclusions that the statements were not testimonial. As testimonial hearsay, the dissent argued, the statement was subject to the demands of the Confrontation Clause. Id. at _, 132 S. Ct. at 2272-77. Justice Kagan closed the dissent by predicting that the Court’s fractured decision would cause “significant confusion” for lawyers and judges. Id. at_, 132 S. Ct. at 2277.
Despite the lack of definitive guidance on the issue before us, a close examination of Williams v. Illinois seems to indicate that a qualified expert may provide an independent opinion based on otherwise inadmissible out-of-court statements in certain contexts. Both the plurality and dissent agreed that an expert’s opinion may ultimately be admissible, but they disagreed as to the foundational information required. See id. at _, _, 132 S. Ct. at 2228, 2236 (plurality) (“Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true.”); id. at_, 132 S. Ct. at 2270 (dissenting opinion) (“[The witness] could have added that if the Cellmark report resulted from scientifically sound testing of [the victim’s] vaginal swab, then it would link Williams to the assault.”). We note the dissent’s concern in Williams was the use of out-of-court statements by a declarant whom the criminal defendant had no opportunity to cross-examine. Id. at _,_, 132 S. Ct. at 2265, 2268. But when an expert states her own opinion, without merely repeating out-of-court statements, the expert is the person whom the defendant has the right to cross-examine.
We believe our prior holding on this issue is consistent with this conclusion. In 2001 we stated that when an expert gives an opinion, “[i]t is the expert opinion itself, not its underlying factual basis, that constitutes substantive evidence.” State v. Fair, 354 N.C. 131, 162, *9 557 S.E.2d 500, 522 (2001) (citation omitted), cert. denied, 535 U.S. 1114, 122 S. Ct. 2332 (2002). Therefore, when an expert gives an opinion, the expert is the witness whom the defendant has the right to confront. In such cases, the Confrontation Clause is satisfied if the defendant has the opportunity “ ‘to fully cross-examine the expert witness who testifies against him,’ ” allowing the factfinder “ ‘to understand the basis for the expert’s opinion ■ and to determine whether that opinion should be found credible.’ ” Id. (citations omitted). Accordingly, admission of an expert’s independent opinion based on otherwise inadmissible facts or data “of a type reasonably relied upon by experts in the particular field” does not violate the Confrontation Clause so long as the defendant has the opportunity to cross-examine the expert.[1] N.C. R. Evid. 703; see Fair, 354 N.C. at 162-63, 557 S.E.2d at 522; see also United States v. Turner, 709 F.3d 1187, 1190 (7th Cir. 2013). We emphasize that the expert must present an independent opinion obtained through his or her own analysis and not merely “surrogate testimony” parroting otherwise inadmissible statements. See Bullcoming,_U.S. at_, 131S. Ct. at 2710 (majority).
A related issue is whether an expert who bases an opinion on otherwise inadmissible facts and data may, consistent with the Confrontation Clause, disclose those facts and data to the factfinder. Machine-generated raw data, typically produced in testing of illegal drugs, present a unique subgroup of this type of information. Justice Sotomayor has noted there is a difference between a lab report certifying a defendant’s blood-alcohol level and “machine-generated results, such as a printout from a gas chromatograph.” Bullcoming, _U.S. at_, 131 S. Ct. at 2722 (Sotomayor, J., concurring in part). The former is the testimonial statement of a person, see id. at_, 131 S. Ct. at 2717 (majority), and the latter is the product of a machine. A number of courts have concluded that machine-generated raw data are not testimonial hearsay under the Confrontation Clause. One court wrote: “Nor is a machine a ‘witness against’ anyone. If the readings are ‘statements’ by a ‘witness against’ the defendants, then the machine must be the declarant. Yet how could one cross-examine [a machine]?” United States v. Moon, 512 F.3d 359, 362 (7th Cir.), cert. *10 denied, 555 U.S. 812, 129 S. Ct. 40 (2008); see also United States v. Washington, 498 F.3d 225, 231 (4th Cir. 2007), cert. denied, 557 U.S. 934, 129 S. Ct. 2856 (2009); David H. Kaye et al., The New Wigmore: A Treatise on Evidence § 4.12.5 (Richard D. Friedman ed., Supp. 2013) [hereinafter Wigmore on Evidence]. Because machine-generated raw data, “if truly machine-generated,” are not statements by a person, they are “neither hearsay nor testimonial.” Wigmore on Evidence § 4.12.5, at 44; see also Williams,_U.S. at_, 132 S. Ct. at 2259 (Thomas, J., concurring in the judgment) (“[T]he Confrontation Clause regulates only the use of statements bearing indicia of solemnity.” (citation and internal quotation marks omitted)). We note that “representations [ ] relating to past events and human actions not revealed in raw, machine-produced data” may not be admitted through “surrogate testimony.” Bullcoming, _ U.S. at _, 131 S. Ct. at 2714. Accordingly, consistent with the Confrontation Clause, if “of a type reasonably relied upon by experts in the particular field,” N.C. R. Evid. 703, raw data generated by a machine may be admitted for the purpose of showing the basis of an expert’s opinion.
We turn now to the instant case. Before reaching the dispositive legal issue, we must address matters of procedure. Defendant alleges that several portions of Ray’s testimony were erroneously admitted, yet defendant objected only once during the course of Ray’s testimony. “In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the contéxt.” N.C. R. App. P 10(a)(1). While unpreserved evidentiary error in criminal cases may be reviewed for plain error, “the defendant must ‘specifically and distinctly’ contend that the alleged error constitutes plain error.” State v. Lawrence, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) (quoting N.C. R. App. P. 10(a)(4)). Defendant did not allege plain error; therefore, we review only the single alleged error to which he objected at trial and thereby preserved for appellate review: Agent Ray’s statement that in her expert opinion the substance was cocaine.[2] We review this alleged constitutional error de novo.
*11 During voir dire defense counsel moved to exclude admission of the lab report, the lab tests, and any testimony by any lab analyst who did not personally perform the tests or write the reports, based on Confrontation Clause grounds. The court ruled that Ray could testify about her background, experience, education, and training; the practices and procedures of the CMPD crime lab; and her review of the testing done and her independent opinion. The court also ruled that the State could not admit the non-testifying analyst’s report into evidence because of considerations under Rule of Evidence 403. Thus, unlike in Melendez-Diaz and Bullcoming, the reports produced by the non-testifying analyst were not admitted into evidence.
Before the jury Ray was certified as an expert in forensic chemistry and testified regarding the CMPD crime lab’s standard procedures and her review of the tests associated with the substance at issue. The prosecutor then asked:
Q. Based on your training and experience in the field of forensic chemistry and your employment at the CMPD crime lab as well as other labs prior to that and your review of the file in this case, did you have a chance to form your own independent expert opinion as to the identity of the substance in control number 16826?
A. Yes, I did.
Q. What is your independent expert opinion?
[DEFENSE COUNSEL]: Objection, your Honor. I don’t need to be heard further.
THE COURT: Yes, ma’am. Objection overruled, you may answer.
A. My conclusion was that the substance was cocaine.
Q. Is that still your opinion currently?
A. Yes, it is.
Based on defendant’s arguments at the earlier voir dire hearing, it is clear that this objection was based on the Confrontation Clause.
*12 Defendant argues that this rendering of Ray’s expert opinion on a substance she did not personally test or observe being tested violated his right to confront witnesses against him. We disagree. As we stated above, when an expert gives an opinion, the opinion is the substantive evidence and the expert is the witness whom the defendant has the right to confront. In accordance with Rule of Evidence 703, Ray gave her expert opinion that was based upon facts or data “of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.” N.C. R. Evid. 703. The prosecutor laid the foundation for the Rule 703 testimony:
Q. And are these tests [color test, melting point, and GCMS] standards such that other experts in the field of forensic chemistry would rely upon them in performing [sic] the opinion as to the identity of a chemical substance?
A. Yes, they are.
Further, the prosecutor established that Ray’s opinion was her own, independently reasoned opinion — not “surrogate testimony” parroting the testing analyst’s opinion. See Bullcoming,_U.S. at__., 131 S. Ct. at 2710.
Q. And for trial today were you asked to review the chemical analysis that was performed on Item Number 9, control number 16826?
A. Yes, I did.
Q. And did you do that review?
A. Yes.
Q. And what complaint number is associated with that, this case and that control number?
A. The complaint number is 20070516223000.
Q. And what control number is that?
A. 200716826.
Q. When you conducted this peer review, specifically what documents did you review?
A. I reviewed the drug chemistry worksheet or the lab notes that the analyst wrote her notes on and the data that came from the *13 instrument that was in the case file and then I also reviewed the data that was still on the instrument and made sure that was all there too.
As part of her review, Ray analyzed the “reviewable data” generated by the GCMS machine. Ray testified that the machine internally records the data and there is no way to make alterations to what is recorded. As she stated on cross-examination, the GCMS machine produces a graph based on its testing, from which Ray was able to determine “the molecular weight of the substance and how it breaks down and relate that back to the chemical structure.” Ray compared the machine-produced graph to the data from the lab’s sample library and concluded that the substance was cocaine.
This expert opinion, from Ray’s own analysis of the data, constituted the substantive evidence being presented against defendant. See Fair, 354 N.C. at 162, 557 S.E.2d at 522. Therefore, the testifying expert was the witness whom defendant had the right to confront. Id. Defendant was able to cross-examine Ray fully concerning all aspects of her testimony. See id. Indeed, the cross-examination made abundantly clear for the jury that Ray “didn’t personally observe any of these tests being done” and that she “ha[d] to assume [the testing analyst] followed the standard operating procedures.”[3] Accordingly, the admission of Ray’s expert opinion did not violate defendant’s right to confront witnesses against him.
Even assuming admission of Ray’s expert opinion violated defendant’s rights under the Confrontation Clause, the alleged error was harmless, providing a separate, adequate, and independent state law ground for the judgment of the Court. “When violations of a defendant’s rights under the United States Constitution are alleged, harmless error review functions the same way in both federal and state courts.” Lawrence, 365 N.C. at 513, 723 S.E.2d at 331. “A violation of the defendant’s rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.” N.C.G.S. § 15A-1443(b) (2011).
*14 The arresting officer testified that when he found the plastic baggy containing a white substance, he picked it up and asked defendant, “What’s this?” The officer further testified that defendant acknowledged it was his cocaine — and asserted it was for personal use and he was not dealing drugs. In the same compartment as the plastic baggy containing the white substance, the officer also found “eight separate plastic sandwich baggies, similar to the plastic baggy that was wrapped around the [white substance] [he] found.” The officer testified that cocaine is typically packaged for sale in sandwich baggies. Defendant’s explanation at trial for his possession of the substance was that he had stopped at a gas station to buy some milk and three men “knocked on the [car] door and they handed me [the substance and baggies] and told me give us money for this.” He stated he was afraid he was being robbed, so he handed the men a portion of the $500 in cash from his pockets but “never imagined that it was drugs or something like that.” Defense counsel elicited a statement from the arresting officer that the substance “appears to be powder cocaine.” Under these facts, in which defendant told a law enforcement officer that the substance was cocaine and defense counsel elicited testimony that the substance appeared to be cocaine, any possible error in allowing the expert opinion was harmless. See State v. Nabors, 365 N.C. 306, 312-13, 718 S.E.2d 623, 627 (2011).
The Sixth Amendment guarantees that “ ‘[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him.’ ” Crawford, 541 U.S. at 38, 124 S. Ct. at 1357 (quoting U.S. Const, amend. VI). CMPD forensic chemist Tracey Ray analyzed the data pertaining to the seized substance and gave her independent expert opinion that the substance was cocaine. Defendant had the opportunity to cross-examine the witness against him: Tracey Ray. The admission of an independent expert opinion based on the expert’s own scientific analysis is not the type of evil the Confrontation Clause was designed to prevent. We find no error and reverse the Court of Appeals.
REVERSED.
Justice BEASLEY took no part in the consideration or decision of this case.

. The dissenting opinion would adopt the four-part analysis set out in State v. Brewington, 204 N.C. App. 68, 78, 693 S.E.2d 182, 189 (2010). We decline to adopt this test, as it is not generally applicable to cases such as the one before us. For example, under the dissent’s proposed test, the first step is to “determine whether the underlying lab report is testimonial.” But the Confrontation Clause is concerned with testimonial hearsay. See, e.g., Crawford, 541 U.S. at 68,124 S. Ct. at 1374. If the challenged testimony is not hearsay — in other words, if the witness does not repeat out-of-court statements — then it is not necessary to determine whether a lab report is testimonial.

. The dissenting opinion argues Agent Ray “testified to some of [the] contents” of the report written by the non-testifying analyst. As an example, the dissent writes: “[The analyst] was later asked, ‘[C]an you tell us what [the original analyst’s] result appears to have been?’ She answered, ‘[0]n the color test, it has a positive sign with a circle around it and then says blue underneath that.’ ” The dissenting opinion fails to note, however, that this testimony was elicited by defendant’s attorney on cross-examination — not by the State. Further, defendant objected only when the prosecution asked Ray, “What is your independent expert opinion?” “Generally speaking, *11 the appellate courts of this state will not review a trial court’s decision to admit evidence unless there has been a timely objection. . . . [, which] must be contemporaneous with the time such testimony is offered into evidence.” State v. Ray, 364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010) (internal citations and quotation marks omitted). Therefore, we review only the testimony to which defendant objected.

. Viewing the separate opinions in Williams v. Illinois in their totality, we suggest that prosecutors err on the side of laying a foundation that establishes compliance with Rule of Evidence 703, as well as the lab’s standard procedures, whether the testifying analyst observed or participated in the initial laboratory testing, what independent analysis the testifying analyst conducted to reach her opinion, and any assumptions upon which the testifying analyst’s testimony relies.