IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1133

Filed 3 December 2024

Avery County, No. 20 CRS 50340

STATE of NORTH CAROLINA, Plaintiff,

v.

MELVIN HOWARD CLARK, Defendant.

Appeal by defendant from judgment entered 16 February 2023 by Judge R. Gregory Horne in the Superior Court of Avery County. Heard in the Court of Appeals 11 September 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General William L. Flowers, III, for the State.*

*Anne Bleyman for defendant-appellant.*

DILLON, Chief Judge.

Defendant Melvin Howard Clark appeals from judgment entered upon the jury's verdict of guilty of possession with intent to sell and deliver methamphetamine. We vacate the judgment and remand to the trial court.

I. Background

On 26 August 2020, Defendant was subject to warrantless searches as a condition of his probation. Officers had received tips about Defendant dealing drugs

from his residence. Upon searching his residence and person, officers seized containers of a crystalline substance, among other items.

A forensic analyst, Ms. Fox, tested the crystalline substance and created a laboratory report for the State for the evidentiary purpose of identifying the substance. However, when the time came for Defendant's trial, Ms. Fox was unavailable to testify. Therefore, the State called another analyst, Mr. Cruz-Quiñones, as its only expert witness. He offered his expert opinion that the crystalline substance tested by Ms. Fox was, in fact, methamphetamine. He based his opinion upon statements made by Ms. Fox contained in her lab report, as he never performed any testing on the substance himself.

Defendant was convicted of possession with intent to sell and deliver methamphetamine. Defendant timely appealed.

## II. Analysis

On appeal, Defendant argues the opinion testimony of Mr. Cruz-Quiñones violated Defendant's rights under the Confrontation Clause of the Sixth Amendment essentially because the basis of Mr. Cruz-Quiñones's opinion was statements made by another analyst, whom Defendant had no opportunity to confront. We review *de novo* alleged constitutional violations objected to at the trial court. *See Smith v. City of Fayetteville*, 227 N.C. App. 563, 565 (2013). *See also State v. Abbitt*, 385 N.C. 28, 40 (2023) ("[A]ny alleged violation of a defendant's constitutional rights are reviewed de novo.").

The Confrontation Clause provides that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him. U.S. Const. Amend. VI. *See Crawford v. Washington*, 541 U.S. 36, 38 (2004). "The Clause bars the admission at trial of testimonial hearsay statements of an absent witness unless she is unavailable to testify, and the defendant has had a prior opportunity to cross-examine her." *Smith v. Arizona*, 602 U.S. 779, 783 (2024) (internal citation and quotation marks omitted). *See also Crawford*, 541 U.S. at 68 ("Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.").

In 2009, the Supreme Court of the United States made it clear that the Confrontation Clause applies to forensic reports, meaning a prosecutor "cannot introduce an absent laboratory analyst's *testimonial* out-of-court statements to prove the results of forensic testing." *Smith*, 602 U.S. at 783 (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 307 (2009)) (emphasis added). In other words, based on the Confrontation Clause, a prosecutor may not offer *a lab report* as the sole evidence to prove that a substance is an illegal drug. Our Supreme Court has emphasized, though, that unsworn reports may sometimes be admissible where they are more in the nature of "business records" and not "testimonial evidence" reports. *State v. Forte*, 360 N.C. 427, 435 (2006).

The issue in the present case is slightly different than that in *Melendez-Diaz* and *Forte.* Here, the evidence introduced by the State was *not* Ms. Fox's lab report

itself. Rather, the evidence offered by the State was the *expert opinion* of Mr. Cruz-Quiñones, who relied upon Ms. Fox's report as the basis of his expert opinion.

Rule 703 of our Rules of Evidence provides that an expert's opinion is not rendered inadmissible merely because he relies upon facts or data, which *themselves* are not admissible into evidence, as long as said facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions[.]" N.C.G.S. § 8C-1, Rule 703 (2024).

Interpreting Rule 703, in 2013, our Supreme Court held that the opinion of an expert concerning the identity of a particular substance may be admissible even though the testifying expert did not test the substance but rather relied upon testing performed by another analyst. *State v. Ortiz-Zape*, 367 N.C. 1, 9 (2013) (reasoning that the admission of "an expert's independent opinion *based on* otherwise inadmissible facts or data 'of a type reasonably relied upon by experts in the particular field' does not violate the Confrontation Clause so long as the defendant has the opportunity to cross-examine the expert.").

However, just a few months ago, in *Smith v. Arizona*, the Supreme Court of the United States held that the opinion testimony of a surrogate expert who relies upon the "testimonial hearsay" statements contained in a lab report or notes prepared by another analyst who tested the substance in question implicates a defendant's right under the Confrontation Clause. 602 U.S. at 802–03.

The issue before the Court in *Smith* involved the identification at trial of drugs seized from a defendant where a forensic analyst performed laboratory tests on seized items and prepared a signed report along with her notes documenting her lab work. *See id.* at 790. Her report disclosed, for each item: (1) a description; (2) its weight and the method of weight measurement used; (3) the tests she performed on the item; (4) the results of the tests; and (5) her conclusion on the item's identity. *See id.*

At trial, however, the lab analyst did not testify. Rather, a substitute analyst, who prepared by reviewing the lab analyst's notes and report, testified. *See id.* After "telling the jury what [the lab analyst's] records conveyed about her testing of the items, [the substitute analyst] offered an 'independent opinion' of their identity" and came to the same conclusion as the lab analyst. *Id.* at 791.

The defendant challenged the admissibility of the substitute analyst's opinion as a violation of his rights under the Confrontation Clause.

In its analysis, the Supreme Court reminded that "[t]o implicate the Confrontation Clause, a statement must" meet two criteria; namely, the statement must "[1] be hearsay ('for the truth') *and* [2] it must be testimonial . . . ." *Id.* at 800 (emphasis added). And if a lab analyst's statement meets both criteria, then the "State may not introduce" the statement unless the lab analyst "is unavailable and the defendant has had a prior chance to cross-examine her." *Id.* at 802–03.

Regarding the first prong—whether the lab analyst's statements were hearsay—the state of Arizona argued that said statements contained in the lab report

were not being offered for their truth—and therefore are not hearsay—but rather were being offered merely to "show the basis" of the in-court expert's independent opinion. *See id.* at 793. The Supreme Court, however, flatly rejected that and held that the statements contained in the lab report are hearsay:

> But truth is everything when it comes to the kind of basis testimony presented here. If an expert for the prosecution conveys an out-of-court statement in support of his opinion, and the statement supports that opinion only if true, then the statement has been offered for the truth of what it asserts. How could it be otherwise? The whole point of the prosecutor's eliciting such a statement is to establish— *because of the statement's truth*—a basis for the jury to credit the testifying expert's opinion. . . .
>
> Or to see the point another way, consider it from the factfinder's perspective. In the view of the Arizona courts, an expert's conveyance of another analyst's report enables the factfinder to determine whether the [testifying] expert's opinion should be found credible. That is no doubt right. The jury cannot decide whether the expert's opinion is credible without evaluating the truth of the factual assertions on which it is based. If believed true, that basis evidence will lead the jury to credit the opinion; if believed false, it will do the opposite. But that very fact is what raises the Confrontation Clause problem. For the defendant has no opportunity to challenge the veracity of the out-of-court assertions that are doing much of the work.

*Id.* at 795–96 (internal citations and marks omitted). The Court was not swayed by Arizona's evidentiary rule (similar to our Rule 703) which allows an expert to render "his own independent opinions" based upon inadmissible data, reasoning that:

> [F]ederal constitutional rights are not typically defined— expanded or contracted—by reference to non-constitutional bodies of law like evidence rules. . . . 'Where testimonial

- 6 -

> statements are involved,' [we have] explained, 'the Framers did not mean to leave the Sixth Amendment's protection to the vagaries of the rules of evidence.'

*Id.* at 794 (citing *Crawford*, 541 U.S. at 61).

In the present case, Mr. Cruz-Quiñones in the same way relied upon the truth of Ms. Fox's statements in her report, which contained information about the substance Ms. Fox was testing, the methods she followed in testing it, and the purported results of her testing. That is, Ms. Fox's statements are hearsay. Without independent testing on his part, Mr. Cruz-Quiñones's opinion is only persuasive if Ms. Fox's statements were true. As the Supreme Court reasoned in *Smith*:

> If [the lab analyst] had lied about [how she performed her work], the [substitute analyst's] expert opinion would have counted for nothing, and the jury would have been in no position to convict. So the State's basis evidence—more precisely, the truth of the statements on which its expert relied—propped up its whole case. But the maker of those statements was not in the courtroom, and [the defendant] could not ask her any questions.

*Id.* at 798.

But the fact that Ms. Fox's statements in her lab report are "hearsay" does not necessarily implicate the Confrontation Clause, unless the statements are also be shown to be "testimonial." *Id.* at 800.

The Supreme Court in *Smith* did not reach the question of whether the lab analyst's report and notes in its case were testimonial, stating that the issue was not presented in that appeal:

> What remains is whether the out-of-court statements . . . were testimonial. . . .
>
> But that issue is not now fit for our resolution. The question presented in [the defendant's] petition for certiorari did not ask whether [the lab analyst's] out-of-court statements were testimonial.

*Id.*. Therefore, the Court remanded the matter for the Arizona trial court to consider the issue. *See id.* at 801. The Court did, though, provide guidance for the trial court in making that determination: to first determine *which* statements of the lab analyst were being relied upon by the testifying analyst, and to then determine the "primary purpose" for which those statements were made, "and in particular on how it relates to a future criminal proceeding." *See id.* at 800. In other words, the court should consider "why [the lab analyst] created the report or notes." *Id.* at 802.

Our State Supreme Court, however, has held that lab reports "created *solely* for an evidentiary purpose, made in aid of a police investigation, [ ] rank as testimonial." *See State v. Craven*, 367 N.C. 51, 57 (2013) (internal quotations and marks omitted) (emphasis added) (holding that lab reports of testing whether white powder found on the defendant was cocaine were testimonial).

Based on our Supreme Court's holding in *Craven*, we must conclude Ms. Fox's hearsay statements contained in her report and relied upon by Mr. Cruz-Quiñones, without independent testing, are testimonial as a matter of law. The record before us shows Ms. Fox's report was created *solely* to aid in the police investigation of Defendant as a matter of law. Nothing in the record indicates the report was created

to aid in the provision of health care to Defendant or for any other reason, unlike perhaps a hospital's blood toxicology report prepared at least in part to aid in the provision of treatment to a defendant.

Indeed, the lab report here shows on its face that Ms. Fox conducted the testing for the "Avery County Sheriff's Office" in connection with an investigation of Defendant. It states above Ms. Fox's signature that "THIS REPORT IS TO BE ONLY IN CONNECTION WITH AN OFFICIAL CRIMINAL INVESTIGATION" and that it "contains the opinions/interpretations of [Ms. Fox]." The report also identifies itself as "an official file of the North Carolina State Crime Laboratory."

We, therefore, conclude that Mr. Cruz-Quiñones's failure to independently test the substance and his sole reliance upon Ms. Fox's statements contained in her report—being hearsay and testimonial in nature—implicated Defendant's rights under the Confrontation Clause.

## III.  Conclusion

The State relied upon the opinion of Mr. Cruz-Quiñones to meet its burden of proving that the substance found in Defendant's possession was methamphetamine. In forming his opinion, Mr. Cruz-Quiñones did not independently test the substance and relied upon the lab report prepared by Ms. Fox in stating his opinion.

Based on the Supreme Court of the United States's recent holding in *Smith v. Arizona,* we conclude that Ms. Fox's statements relied upon by Mr. Cruz-Quiñones were hearsay. And based on our Supreme Court's holding in *Craven*, we must

conclude that Ms. Fox's statements were "testimonial," as Ms. Fox conducted the testing and prepared her report solely to aid in the criminal investigation and prosecution of Defendant. Accordingly, Defendant's right under the Confrontation Clause was implicated by Mr. Cruz-Quiñones's opinion testimony.

Because nothing in the record suggests that Defendant ever had the opportunity to cross-examine Ms. Fox about her lab report, we must conclude that the trial court erred by allowing Mr. Cruz-Quiñones's opinion testimony. As this opinion testimony was the State's proof regarding the seized substance's identity, we hold that this error was prejudicial to Defendant in his trial.

Accordingly, we vacate the judgment against Defendant and remand for a new trial or other proceedings consistent with this opinion.

VACATED AND REMANDED.

Judges TYSON and WOOD concur.