IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-560

Filed 20 May 2026

Wake County, No. 19CR213303-910

STATE OF NORTH CAROLINA

v.

THERIC ARNOLD HOLT, Defendant.

Appeal by Defendant from judgment entered 23 February 2024 by Judge James P. Hill in Wake County Superior Court. Heard in the Court of Appeals 24 February 2026.

*Attorney General Jeff Jackson, by Assistant Attorney General Jessica Major, for the State.*

*John W. Moss for Defendant.*

GRIFFIN, Judge.

Defendant Theric Arnold Holt appeals from a judgment entered after a jury found him guilty of driving while impaired. Defendant argues the trial court erred in allowing the admission of an expert witness's opinion and a laboratory review report because they violated his rights under the Confrontation Clauses of both the United States and North Carolina Constitutions. We agree and award a new trial.

## I. Factual and Procedural Background

On 19 July 2019, Wake Forest Police Department's Corporal Kevin Murray pulled over Defendant for running a red light. Cpl. Murray approached Defendant's vehicle and noticed Defendant's breath smelled of alcohol and his eyes appeared bloodshot and glassy. Cpl. Murray also saw a half-empty bottle of bourbon on the passenger floorboard. Defendant admitted he had consumed one drink about an hour and a half earlier before the traffic stop. In consideration of the circumstances, Cpl. Murray asked Defendant to perform three field sobriety tests. Cpl. Murray also offered Defendant a preliminary breath test, which Defendant initially declined. All considering, Cpl. Murray formed an opinion that Defendant was appreciably impaired by alcohol and arrested him for impaired driving.

Cpl. Murray transported Defendant to the Wake County Detention Center. Defendant refused to provide a breath sample on the EC/IR II to measure alcohol concentration. As a result of the refusal, Cpl. Murry applied for a warrant to collect a blood sample from Defendant for analysis. One of the on-site nurses at the detention center drew Defendant's blood at 3:30 a.m. A nurse gave the blood sample to Cpl. Murray, who sealed the package and put it into an evidence kit. After he finished processing Defendant, Cpl. Murray returned to the Wake Forest Police Department and locked the kit in an unrefrigerated locker at 4:37 a.m. About four and a half hours later, an evidence technician moved the evidence kit containing Defendant's blood to an evidence room refrigerator. About four days later, another technician moved the kit to another unit in an evidence refrigerator.

On 25 July 2019, Irvin Allcox, an analyst for the Wake City-County Bureau of Identification ("CCBI"), removed Defendant's blood sample from its evidence refrigerator for testing. Allcox completed Defendant's blood test using the gas chromatography method and determined the alcohol concentration was 0.15 grams per 100 milliliters of blood. Dr. Richard Waggoner, who also works for the CCBI in the DWI Blood Chemistry Unit, performed a technical and administrative review of Allcox's work. In performing both administrative and technical reviews, Dr. Waggoner reviewed "the data and notes to ensure that all the CCBI laboratory and CCBI main procedures and policies were followed;" confirmed the CCBI laboratory request header information was appropriately placed; checked for spelling, typographical, mathematical, and clerical errors; and made sure the information within the lab report, especially the results, was supported by the underlying data. After reviewing the gas chromatograph and performing his own calculations, Dr. Waggoner approved Allcox's work and came to the same conclusion that Defendant's blood alcohol concentration was 0.15 grams of alcohol per 100 milliliters of blood.

Defendant was found guilty in Wake County District Court of impaired driving. He was sentenced to sixty days in custody of the Misdemeanant Confinement Program, which was suspended for twelve months of supervised probation. Additionally, Defendant had to complete twenty-four hours of community service. Defendant appealed to Superior Court.

In March 2023, Defendant stood trial in Wake County Superior Court. The jury could not reach a unanimous verdict, and the trial judge declared a mistrial.

The case was called for trial again, approximately one year later. There, the court accepted the State's tender of Dr. Waggoner as an expert witness in the fields of forensic chemistry and forensic toxicology. However, the State did not call Allcox to testify, as he had retired from the Wake CCBI in March 2020. In his testimony, Dr. Waggoner acknowledged he "did not perform the analysis on this case" and was not "involved in the testing or the receipt of evidence." Dr. Waggoner testified the following could have presented possible problems in Allcox's testing, but he personally did not have the opportunity to check for these matters: clotting, fermentation, the sample's packaging, vial leaks, the blood volume, homogeneity, and pipetted bubbles. Additionally, Dr. Waggoner testified clotting and fermentation of the sample have the potential to produce artificially high alcohol levels.

Furthermore, the State introduced Exhibit 7, which began with the "CCBI Laboratory Technical and Administrative Review/Coversheet" for Defendant's results. Exhibit 7 also contained Allcox's underlying report Dr. Waggoner had reviewed. Defendant objected to this on Confrontation Clause grounds, as well as hearsay and authentication. In response, the trial court overruled Defendant's objection and received State's Exhibit 7, subject to a limiting instruction for the jury. The limiting instruction emphasized that Exhibit 7 was not received as substantive evidence nor as proof of the alcohol concentration of the blood; rather, the exhibit

must only be considered for the limited purpose of disclosing information Dr. Waggoner had considered in arriving at his opinion.

This jury found Defendant guilty of driving while impaired under the sole theory that "at the time of driving, having consumed sufficient alcohol that, at any relevant time after the driving, [Defendant] had an alcohol concentration of 0.08 or more grams of alcohol per 100 milliliters of blood." Defendant timely appeals.

## II.    Analysis

Defendant contends the trial court's admission of Dr. Waggoner's opinion and State's Exhibit 7 violated his rights under the Confrontation Clauses of the Sixth Amendment of the Constitution of the United States and of Article I, Section 23 of the North Carolina Constitution.

Both the United States and North Carolina Constitutions feature Confrontation Clauses. U.S. Const. amend. XI; N.C. Const. art. 1, § 23. While the clauses are not identical in language, North Carolina courts have "generally construed the right to confrontation under our state constitution consistent with the federal provision." *State v. Fowler*, 353 N.C. 599, 614–15, 548 S.E.2d 684, 696 (2001) (citations omitted).

The Confrontation Clause guarantees the accused the right "to be confronted with the witnesses against him" in criminal prosecutions. *Crawford v. Washington*, 541 U.S. 36, 38 (2004); *State v. Perry*, 210 N.C. 796, 797, 188 S.E.2d 639, 640 (1939) (citation omitted). Accordingly, the Clause prohibits the admission of testimonial

statements at trial when a witness is absent, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Smith v. Arizona*, 602 U.S. 779, 784 (2024) (citing *Crawford*, 541 U.S. at 53–54); *State v. Clark*, 296 N.C. App. 718, 719, 909 S.E.2d 566, 568 (2024) (citation omitted). "In operation, the Clause protects a defendant's right of cross-examination by limiting the prosecution's ability to introduce statements made by people not in the courtroom." *Smith*, 602 U.S. at 783–84. This Court reviews alleged constitutional violations de novo. *Clark*, 296 N.C. App. at 719, 909 S.E.2d at 568 (citation omitted).

Laboratory tests and forensic reports are not exempt from the Confrontation Clause as they are subject to manipulation or human error. *Smith*, 602 U.S. at 785 (citation omitted). To protect from this fallibility, a defendant may cross-examine an analyst by asking about the tests the analysts performed, the risk of error presented in the tests, and an analyst's proficiency in interpreting the test results. *Id.* at 786 (citation omitted). Where one individual actually performed the lab work and created the applicable reports, a surrogate expert witness, who merely reads that other individual's output, violates the Confrontation Clause. *Id.*

There "is a difference between a lab report certifying a defendant's blood-alcohol level and 'machine-generated results, such as a printout from a gas chromatograph.'" *State v. Ortiz-Zape*, 367 N.C. 1, 9, 743 S.E.2d 156, 161 (2013) (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 673 (Sotomayor, J., concurring in part) (2011)). Computer-generated data, created by a machine and free from human

- 6 -

judgment, is not testimonial hearsay. *State v. Lester*, 387 N.C. 90, 98–99, 910 S.E.2d 642, 648–49 (2025) (citation omitted). Machines are not people and, therefore, cannot be declarants or offer testimonial statements. *Id.* at 98–99, 910 S.E.2d at 648–49. However, representations "'relating to past events and human actions not revealed in raw, machine-produced data' may not be admitted through 'surrogate testimony,'" as restricted by the Confrontation Clause. *Ortiz-Zape*, 367 N.C. at 9, 743 S.E.2d at 161 (citing *Bullcoming*, 564 U.S. at 660).

The Confrontation Clause only applies to testimonial hearsay. *Smith*, 602 U.S. at 783 (citation omitted). A statement is hearsay when it is offered for the truth of the matter asserted. *Id.* at 785, 800 (citations omitted). So, when a statement is not admitted for its truth, the Confrontation Clause, and its protection of the right to cross-examine, is not implicated because the absent witness's truthfulness is not at issue. *Id.* at 785 (citation omitted).

Whether a statement is testimonial depends on the statement's primary purpose, including its relation to future criminal proceedings. *Id.* at 802 (citation omitted) ("[T]he document's primary purpose must have 'a focus on court.'"). For instance, a lab analyst's evidentiary recordkeeping activities would signal the statements within those records are testimonial, whereas statements within records that were made to comply with laboratory accreditation or for internal review would likely indicate those statements are not testimonial. *Id.* at 802; *contrast State v. Craven*, 367 N.C. 51, 56–57, 744 S.E.2d 458, 461 (2013) (citations omitted)

(determining State Bureau of Investigation lab reports containing the test results of seized substances from the defendant were undoubtedly testimonial), *with State v. Tate*, 299 N.C. App. 507, 530–32, 918 S.E.2d 886, 902 (2025) (holding the report was not testimonial because the defendant was not identified as a potential suspect when the test kit was sent to the private lab and it was not *solely* to aid in the police investigation), *and Williams v. Illinois*, 567 U.S. 50, 84–85 (2012) (plurality opinion) (explaining the DNA test results were not testimonial because they were generated by a private, third-party lab and the report was produced prior to any suspect identification). Before a "court can decide the primary purpose of the out-of-court statements introduced at [a defendant's] trial, it needs to determine exactly what those statements were." *Smith*, 602 U.S. at 802.

North Carolina courts treat lab reports created only to assist in police investigations as testimonial. *Clark*, 296 N.C. App. at 723, 909 S.E.2d at 570 (citation omitted). Additionally, the Supreme Court of the United States, in *Bullcoming v. New Mexico*, determined a lab report of a blood-alcohol analysis, despite the absence of notarization, that was created to assist in a police investigation and sent to a state laboratory was testimonial. *Bullcoming*, 564 U.S. at 664–65.

"If an expert . . . conveys an out-of-court statement in support of his opinion, and the statement supports that opinion only if true, then the statement has been offered for the truth of what it asserts." *Smith*, 602 U.S. at 795. There "'is no meaningful distinction between disclosing an out-of-court statement' to 'explain the

basis of an expert's opinion' and 'disclosing that statement for its truth.'" *Id.* at 795 (citation omitted). "The jury cannot decide whether the expert's opinion is credible without evaluating the truth of the factual assertions upon which it is based" as the defendant is entitled to the "opportunity to challenge the veracity of the out-of-court assertions that are doing much of the work." *Id.* at 796 (citation omitted).

When an expert relies on basis evidence to prop up the whole case where the expert's opinions were predicated on the truth of the basis, the expert's testimony is hearsay. *Id.* at 798–800; *see also Tate*, 299 N.C. App. at 526, 918 S.E.2d at 899 (holding that, even though the substitute expert came to a distinct conclusion, the substitute expert, having used the original analyst's results as the basis, made hearsay statements). In other words, the testifying expert analyst effectively becomes a mouthpiece for the analyst who created a report. *Smith*, 602 U.S. at 800; *Tate*, 299 N.C. App. at 523, 918 S.E.2d at 897 (citation omitted).

For example, in *Bullcoming v. New Mexico*, the substitute analyst had similar qualifications and knew about the type of test performed. *Bullcoming*, 564 U.S. at 661–62. Under those facts, the Supreme Court of the United States held that, because the substitute analyst "could not convey what [the original analyst] knew or observed" about "the particular test and testing process he employed" nor could "expose any lapses or lies on the certifying analyst's part," the Confrontation Clause was violated. *Id.*

North Carolina Rule of Evidence 703 provides that the bases of an expert's opinion, if reasonably relied upon by experts in a certain field, need not be independently admissible. N.C. R. Evid. 703; *State v. Watson*, 286 N.C. App. 143, 146, 879 S.E.2d 355, 358 (2022) (citation omitted). The disclosure of such bases helps the fact finders assess the credibility of the opinion's source. *Watson*, 286 N.C. App. at 146, 879 S.E.2d at 358 (citing *State v. Golphin*, 352 N.C. 364, 467, 533 S.E.2d 168, 235 (2000)); *see also Smith*, 602 U.S. at 793–94.

Nevertheless, evidentiary rules "do not control the inquiry into whether a statement is admitted for its truth" as the confrontation right is not usually expanded or contracted by such rules; the Framers did not intend "'to leave the Sixth Amendment's protection to the vagaries of the rules of evidence.'" *Smith*, 602 U.S. at 794 (citation omitted). The Supreme Court of the United States instructed courts to conduct an independent analysis of whether an evidentiary rule alters the Confrontation Clause; however, because Arizona's Rule of Evidence 703, which authorizes the admission of an expert opinion's bases to help the jury evaluate the opinion testimony, is very similar to our own Rule 703, we follow *Smith v. Arizona's* holding. *Id.* at 793–94. Still, experts who base their opinions on an original analyst's work may testify in court to provide personal knowledge about how that lab typically functioned as well as answers to hypothetical questions, without violating the Confrontation Clause. *Id.* at 799.

"A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." N.C. Gen. Stat. § 15A-1443(b) (2023). The State has the burden to demonstrate the error was harmless beyond a reasonable doubt. *Id.*

Here, Dr. Waggoner and Allcox were coworkers at the CCBI and had similar qualifications, as they both reviewed each other's work. For Defendant's case, Dr. Waggoner reviewed Allcox's reports and data, analyzed the chromatograph, and performed his own calculations. However, he testified he likely did not ever see Defendant's blood sample with his own eyes and did not personally know the condition of the blood.

Dr. Waggoner's statements regarding the CCBI's practices and procedures as well as answers to hypotheticals were permissible. *Smith*, 602 U.S. at 799. However, we are focusing on his statements beyond hypothetical answers and testimony of the CCBI's standards.

While Dr. Waggoner knew of the laboratory's procedures and practices, he lacked personal knowledge of Allcox's observation and handling of the blood, and he did not personally participate in the actual blood testing. *Smith*, 602 at 796; *Bullcoming,* 564 U.S. at 661–62. Dr. Waggoner could not convey Allcox's observations about the blood testing or expose any of Allcox's lapses. Accordingly, Defendant was unable to question Allcox's potential human errors including his observation of the condition of the blood sample for possible clotting, fermentation, pipetted bubbles, or

homogeneity in the blood sample, confirmation of the sample's sufficient blood volume, and examination of packaging mistakes or vial leaks. Thus, Defendant did not have the ability to protect against Allcox's fallibility as Defendant lacked the opportunity to challenge the veracity of Allcox's out-of-court assertions that were doing much of the work.

While our Rule of Evidence 703 allows the admission of basis evidence, the Supreme Court of the United States determined there is no meaningful distinction between disclosing an out-of-court statement to explain the basis of an expert's opinion and disclosing that statement for its truth. *Smith*, 602 U.S. at 795 (citation omitted); *Clark*, 296 N.C. App. at 721–22, 909 S.E.2d at 569 (citation omitted). Therefore, like the statements in *Smith*, the basis evidence can be hearsay, as well.

Dr. Waggoner relied upon the truth of Allcox's report, which included properly observing and handling the blood sample for various physical concerns, to prop up his opinion. Consequently, Dr. Waggoner essentially became a mouthpiece for Allcox. Therefore, the part of Dr. Waggoner's testimony that is predicated on Allcox's truthfulness and State's Exhibit 7 are hearsay.

We next address whether the statements, State's Exhibit 7 and Dr. Waggoner's testimony, were testimonial. The Wake Forest Police Department requested laboratory services from the Wake CCBI in its police investigation of Defendant. The Wake CCBI, a city and county bureau created by the North Carolina General

Assembly, is not a private, third-party entity. An Act to Create and Establish a Bureau of Identification for Wake County, ch. 535, 1937 N.C. Sess. Laws 502–03.

When the police department requested the laboratory services, Defendant had been arrested and identified as the suspect for driving while impaired. A search warrant had been granted for the search of Defendant's blood. Moreover, Defendant's case number is featured on the laboratory request form and Dr. Waggoner's review report, including Allcox's underlying report.

The primary purpose behind the statements in Dr. Waggoner's testimony and State's Exhibit 7 was for the evidentiary reason of demonstrating Defendant's blood alcohol concentration was at or above a certain level at the time of driving; in other words, the State's Exhibit 7 was *solely* created to assist in a police investigation. The record does not indicate another purpose for the creation of the lab reports.

Since the relevant statements were both testimonial and hearsay, Defendant's constitutional right to confrontation was violated. The State failed to carry its burden to show the error was harmless beyond a reasonable doubt; Dr. Waggoner's testimony and the State's Exhibit 7 were the only evidentiary support for the specific amount of alcohol in Defendant's blood. Since we have held they violated the Confrontation Clause, the State would not be able to demonstrate Defendant's blood had 0.08 or more grams of alcohol per 100 milliliters without such evidence, and this is the sole theory the jury convicted upon. Therefore, the error was not shown to be harmless

beyond a reasonable doubt. Consequently, the Confrontation Clause violation was prejudicial to Defendant.

### III. Conclusion

Allcox's work propped up Dr. Waggoner's opinion and the State's Exhibit 7. The statements were testimonial hearsay. Thus, Defendant was entitled to cross-examine Allcox but lacked the opportunity to do so. Therefore, Defendant's rights under the Confrontation Clauses were violated. As the State failed to demonstrate the violation was harmless beyond a reasonable doubt, the violation was prejudicial and his conviction and judgment are vacated. Defendant is entitled to a new trial.

NEW TRIAL.

Judges TYSON and FLOOD concur.